**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-00465 (DLF)** |
| | : | |
| **RICKY LYLES et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OMNIBUS MEMORANDUM**
**IN SUPPORT OF PRETRIAL DETENTION AS TO ALL DEFENDANTS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that each of the defendants in this case be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(C) [Serious Drug Felony]. With respect to each of the Defendants, there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendants' appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. § 3142(e)(3)(A).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**APPLICABLE LAW**

Pursuant to 18 U.S.C. §§ 3142(e)(3)(A), there exists a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendants' appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). ). For a detention decision based upon risk of flight, the government only

need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required.  *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, at a detention hearing, the government may present evidence by way of a proffer.  *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. ' 3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the Defendants' appearance at future proceedings.

## FACTUAL BACKGROUND

Beginning in January of 2021, the MPD Narcotics and Special Investigations Division, along with the FBI, launched a formal investigation into the "MLK Crew," which is a group of individuals believed to be operating a drug trafficking conspiracy in and around the 2900 block of Martin Luther King Jr. Avenue, SE, Washington D.C. The investigation began in response to numerous citizen complaints about rampant drug trafficking and accompanying incidents of violence in the area. In addition to numerous citizen complaints, MPD has targeted this area as one of the most notorious in the city in terms of recent shootings and shots fired, as well as for the area's high numbers of arrests—particularly offenses involving drugs and firearms. The area is so

notorious that MPD regularly keeps at least one patrol on the corner, and has installed visible MPD cameras in the area, to curb criminal activity. Unfortunately, as discussed below, MPD's constant presence has had little effect on the MLK Crew's operations and incidences of violence in the area.

When MPD began undercover surveillance of the MLK Crew in January 2021, it regularly observed a large presence of individuals loitering in and around the businesses on the 2900 block of MLK Avenue engaging in obvious narcotic transactions. MPD observed members of the MLK Crew openly carrying large bags of marijuana and selling it on the street. In addition, MPD observed MLK Crew members regularly selling PCP "dippers" (which is a cigarette dipped in PCP), as well as suspected crack cocaine, both on the street, and in nearby businesses. The surveillance photos taken below are a good example of the large number of individuals who are constantly loitering outside of the Mellon Market and Mart Liquor Store selling narcotics. Based on their surveillance, MPD was able to identify the thirteen defendants charged in the Indictment as part of the MLK Crew.





The surveillance images below are a good example of the activities that MPD observed on a daily basis while monitoring the MLK Crew—from the morning hours until late into the evening. The photo on the left shows Kevonte Randall handling a large bag of suspected marijuana right on MLK Mellon and then engaging in a street sale, while the photo on the right shows Dezmond Cunningham and Wesley Leake dipping a cigarette into suspected PCP and providing a buyer with a suspected "PCP Dipper" in the parking lot of the Mart Liquor store.

 

In addition to observing members of the MLK Crew engaging in suspected drug transactions on a near daily basis, over the course of their investigation, MPD obtained the following investigative results *before* indicting all 13 defendants:

## Investigative Results

- **Prosecutable Controlled Narcotic Buys**: 25 buys; over 30 controlled buys in all
- **Narcotics Recovered**: Crack Cocaine, Fentanyl, PCP, Marijuana
- **Controlled Buy Drug Totals**: 142.9 grams cocaine base, 1.8 grams Fentanyl, 7 PCP dippers,
- **Drug seizure totals**:
  - **Vehicle: 194.52 g PCP**
  - **515 Parkland Place**: Approx.. 5 ounces PCP, 9.1 grams cocaine base/fentanyl, 12.4 grams cocaine base
- **Firearms Recovered: 4 firearms**
  - Polymer 80 PMF "Ghost Gun" no serial number, 40 caliber ammunition; (5) rounds in magazine and (1) round in chamber
  - Springfield Armory XD-40 Serial # (XD510101), 40 caliber ammunition; (4) rounds in magazine and(1) round in chamber
  - Polymer 80 PMF "Ghost Gun" no serial number, 9mm caliber ammunition; (29) rounds in magazine and (1) round in chamber
  - Mossberg 500 12 gauge shotgun, obliterated serial number, 5 shotgun shells

Moreover, throughout the course of its investigation, MPD conducted *at least* one controlled buy from twelve of the thirteen defendants (many defendants had several as depicted in the chart *infra* page 16), and arrested the remaining defendant, ███████, in possession of a firearm with an extended magazine, a large bag of marijuana, and plastic baggies for packaging, after he was seen brandishing the gun while arguing with another individual inside of the Mellon Mart on April 18, 2021:



MPD's investigation has demonstrated that the MLK Crew possesses firearms in furtherance of its drug trafficking activities. As previously referenced, prior to indictment, MPD seized four firearms, three of which were seized from MLK Crew members (including Kevonte Randall, Davon Lindsay, and ▮▮▮▮▮▮) and one that was seized (along with PCP, Fentanyl, and cocaine base) from inside a basement storage unit 515 Parkland Place—which was being used as a stash house/sales location.  MPD has observed the following defendants going in and out *or* standing outside of this stash house participating in suspected narcotics transactions: Leon Lindsay, Weasley Leake, Barry Tyson, Ricky Lyles, Davon Lindsay.



Surveillance has also confirmed that the members of the MLK Crew share and transfer firearms to one another. For example, in addition to the one shotgun being stored in the stash house listed above, MPD observed Barry Tyson passing Davon Lindsay a firearm outside of the same stash house. Davon Lindsay was then arrested a short time later (near the stash house) with a Polymer 80 PMF ("Ghost Gun") without a serial number, as well as a high capacity ammunition feeding device, and 30 rounds of 9mm caliber ammunition.



In addition to possessing firearms, the MLK Crew has shown that it is willing to use violence to protect its area of operations. As a recent example, on May 8, 2021, three suspected MLK Crew members approached another individual, inside of the King Gas Station, who was suspected of selling marijuana in the area. All three individuals took out firearms, dragged the victim outside into the parking lot of the gas station, pistol whipped him, and discharged the weapon (which did not strike the victim). A shell casing was recovered from the scene and the entire incident was caught on video surveillance:



Thus far, MPD's police presence has had little effect on the incidences of violence in the area. Below is just a sampling of some of the additional violent incidents that have occurred since the May 8th armed assault at the King Gas Station:

- On May 29, 2021, a Murder occurred at 629 Mellon St SE. The victim was a known associate of the defendants. The victim was sitting in his car when two suspects exited an alley, shot the victim, and then fled on foot.

- On July 8, 2021, an Assault with a Dangerous Weapon (Gun) occurred at 600 Mellon St SE. The two victims both sustained gunshot wounds as a result of this offense. Neither victim provided information to facilitate the investigation. One of the victims is a known associate of the defendants.

- On July 9, 2021 a Robbery occurred at 2921 Martin Luther King Jr Ave SE. The victim came to the area to buy marijuana. During the transaction, one suspect brandished a firearm and pointed it at the victim while the other suspect grabbed the victim's property from his person. One of the suspects is believed to be Leon Lindsay, one of the defendants.

- On July 15, 2021 an Assault with Intent to Kill (Gun) occurred at 625 Mellon Street SE. The victim of the offense is Barry Tyson, a defendant, who is now in custody. Barry Tyson sustained gunshot wounds to the chest, abdomen, and legs.

- On July 16, 2021, a shooting event occurred at 2929 Martin Luther King Jr Ave SE around 11:00 pm. As a result of this shooting, a 6-year-old girl lost their life and five other victims suffered gunshot wounds. The 6-year-old was the child of Nico Griffin, one of the defendants, who also was shot during this event.

The MLK Crew is so brazen about its activities that it openly shares them on Social Media. For example, on January 29, 2021, a video was posted to the "story" of the Instagram account with the username, or "handle", of "longmoney_sosa". This account is believed to be operated by Kevonte Randall. The video shows Kevonte Randall and Ricky Lyles, and an unknown individual, sitting in what appears to be the same minivan that Lyles used to sell crack cocaine to MPD undercover agents on multiple occasions. In the video, Lyles appears to be holding a black firearm that is equipped with a green laser, which he points in the direction of the camera. A photograph

posted in the same "story" shows a Mylar zip containing multiple pills. A text associated with this photograph reads, "Jammers 15 pop." "Jammers" is a common street term for Percocet, a controlled substance. Based on the video, it appears that Randall was eliciting drug sales, charging $15.00 per pill.

 

Other Instagram video obtained by law enforcement shows members of the MLK Crew hanging out with guns inside of 515 Parkland place, which is one of the stash houses for the MLK Crew, in which drugs and guns were subsequently seized and in front of which MPD conducted multiple controlled purchases and observed hand to hand drug transactions.



Instagram video shows Barry Tyson and Davon Lindsay inside of 515 Parkland Place SE (stash house) where drugs and firearm was seized 10 days later

The MLK Crew is so brazen in its criminal activities that it has even created two music videos shared on YouTube bragging about its drug trafficking and firearm activities. In the YouTube Video, "Struggle", by TNR Dolce (posted 9/14/2019), ████████ Nico Griffin, Wesley Leake, and Kevonte Randall, are all identified dancing outside of the Mellon Mart flashing cash and a gun to lyrics such as "I took the drug route, bitch."





A second video, "Back 2 Da Basics" by TNR Dolce (posted to YouTube on 12/10/2019), appears to have been filmed on MLK Avenue, inside the Merry's Kitchen, and inside of an unknown apartment. Throughout the video, members of the MLK Crew, including ███████ and Nico Griffin, are seen flashing firearms, large amounts of cash, and marihuana packaged for distribution. At one point, the lyrics brag about being the "Drug Route CEO."



Although making a YouTube video is protected by the First Amendment, the video corroborates what MPD' observations about the MLK Crew and seized in this case, which includes firearms and narcotics (both pre and post-indictment).

On July 19, 2021, when MPD and FBI engaged in a joint operation to execute the 13 arrest warrants in this case, it also executed 10 search warrants on various residences associated with many of the defendants. The results of the search (seizing five firearms, ammunition, drugs, and drug paraphernalia for packaging) confirm that members of the MLK Crew have access to firearms and narcotics and store these items scattered in various residences across its area of operations.

| Location | Address | Associations | Evidence Seized |
|---|---|---|---|
| 3 | ███████ Washington DC 20032 | Wesley Leake | 1 cell phone belonging to Leake |
| 1 | ███████ Washington DC 20018 | Rico Griffin | 1 empty firearm magazine, crack cocaine, scale, Rico Griffin's ID documents |
| 4 | ███████ Washington DC 20020 | Corenzo Mobery | 10mm Glock pistol, extended empty firearm magazine; suspected white powder in little bags; 2 small notebooks; one samsung; one iphone 10mm ammo; scale; $410; other small baggies |
| 6 | ███████ Washington DC 20019 | Shawn Wooden | 1-2 ounces of heroin |
| 7 | ███████ Washington DC 20019 | Barry Tyson | $1855, $550 in bloody cash; 1 VMX cell; 1 blank fire pistol, 1 firearm magazine and ammo; one 9mm Luger round; one .40 cal round; one kindle fire; one notebook |
| 8 | ███████ Washington DC 20020 | Leon Lindsey | Firearm ammunition |
| 9 | ███████ Washington, DC 20032 | ███████ | 2-3 Heroin zips, 6 rounds of ammunition |
| 10 | ███████ Accokeek, MD 20607 | Ricky Lyles | 7 viles of PCP; 9mm ghost gun; 12g shotgun and an 18x18 locked safe |

| | | | | |
|---|---|---|---|---|
| 2 | ▓▓▓▓▓▓▓▓▓▓<br>Basement Storage,<br>Washington DC 20032 | **Stash House**:<br>Leon Lindsay,<br>Weasley<br>Leake, Barry<br>Tyson, Ricky<br>Lyles, Davon<br>Lindsay | | Suspected crack cocaine; 1ounce bottle<br>(1/3 full) of suspected PCP; 1 razor |
| 5 | ▓▓▓▓▓▓▓▓▓▓<br>▓▓  Washington DC<br>20032 | **Stash House**:<br>Ricky Lyles,<br>Shawn<br>Wooden,<br>▓▓▓▓▓▓,<br>Dezmond<br>Cunningham | | 2 firearms; suspected crack cocaine |

Recent events also serve to confirm the fact that the MLK Crew is desperate to continue its operations no matter who is arrested or how much violence occurs at the drug point. Despite Barry Tyson being shot on July 15th on MLK Avenue, MPD observation confirmed that drug activity continued. Similarly, despite the death of Nico Griffin's 6- year old daughter, and 5 people being shot on Friday, July, 16th, MPD observed several PCP deals on Monday before making arrests. Finally, despite numerous defendants being arrested on Monday, July 19th, Delonta Chappell was arrested with 27.6 grams of cocaine base stuffed between his buttocks the following day. The fact that multiple arrests were made the previous day, yet Delonta Chappell continued to carry cocaine base on his person the following day, shows that the MLK Crew members will seek to continue their operations as long as the are allowed to remain on the streets.

**ARGUMENT**

**The Defendants Should Be Detained Pending Trial Because They Pose a Danger to the Community and Risk of Flight**

In light of the nature and circumstances of the offenses charged, the weight of the evidence against each defendant, each defendant's criminal history and characteristics, and the dangers to the community posed by any defendant's release, the defendants cannot overcome the presumption that they are a danger to the community and a risk of nonappearance. To the contrary, these factors establish that the presumption is correct.

**A.      The nature and circumstances of the offense**

The nature and circumstances of the charged offenses weigh in favor of detention for several reasons. The grand jury found probable cause to believe that all thirteen defendants were engaged in a conspiracy, since January 2021, to distribute 28 grams or more of cocaine base, fentanyl, PCP, and marihuana. These are dangerous drugs that are devasting local communities, causing overdose deaths (particularly fentanyl), and facilitating violence (both domestic and drug-rival related). As explained above, the 13 defendants in this case essentially took over a whole portion of a local community and loitered on a near daily basis, hanging outside of store fronts, and going into stores, to engage in the sale of narcotics. As part of the conspiracy, 12 of the 13 defendants engaged in the controlled sale of narcotics to undercover agents and the remaining defendant, ███████████, was arrested with a firearm and a large quantity of marijuana and charged with a 924(c) (triggering another rebuttal presumption under 18 U.S.C. §§ 3142(e)(3)(B)).

The charges against the defendants expose them to serious periods of incarceration, particularly in light of the fact that nearly all of them have significant criminal histories. Based on the narcotics conspiracy charge alone, each defendant faces up to 20 years in prison under 18 USC 18 U.S.C. §§ 841(b)(1)(C)), while Ricky Lyles faces a minimum sentence of 5 years, but up to 40

years under 18 U.S.C. §§ 841(b)(1)(B)). In addition, many of these defendants have prior drug felonies, which may expose them to more significant sentences. Finally, the fact that law enforcement found additional narcotics and firearms when executing its arrest and search warrants, and recovered additional evidence that is still being evaluated, makes the probability of a Superseding Indictment extremely likely in this case, which could subject the defendants to even higher penalties making their risk of non-appearance even more unlikely.

### B. The weight of the evidence against each defendant

The weight of the evidence against each defendant is extremely strong.  Here, MPD has seen each of the 13 defendants at the drug point on a near daily basis[1] since beginning their surveillance in January 2021. MPD has observed each of these defendants engaging in multiple hand to hand narcotics transactions.  Moreover, MPD has conducted *at least* one controlled buy from 12 of the 13 indicted defendants as illustrated in the following chart. Each of these undercover controlled purchases were video recorded and tracked by multiple MPD agents while the controlled purchase occurred.

---

1 MPD has informed that Delonta Chappell has been observed on multiple occasions, but not necessarily daily.

Controlled Purchase Summary

| Defendant | Date(s) | Listed Narcotic(s) | Total Weight |
|---|---|---|---|
| Ricky Lyles | 3/3/21, 3/10/21/, 3/15/21, 3/23/21, 4/6/21, 4/13/21, 4/30/21, 5/20/21, & 6/4/21 | Crack Cocaine | 131.6 grams |
| Nico Griffin | 3/16/21, 3/24/21, 5/2/21 | Crack Cocaine | 2.1 grams |
| ▮▮▮▮▮▮▮ | 4/2/21 & 4/9/21 | Fentanyl & Crack Cocaine | .7 Fentanyl 2.8 grams crack cocaine |
| Wesley Leake | 3/24/21 & 4/9/21 | PCP & Crack Cocaine | 1 PCP dipped cigarette .5 grams of crack cocaine |
| Leon Lindsay | 3/24/21, 4/9/21 & 4/14/21 | PCP & Crack Cocaine | 6 PCP dipped cigarettes .5 grams of crack cocaine |
| Dezmond Cunningham | 4/21/21 | Fentanyl & Crack Cocaine | .9 grams of Fentanyl .3 grams Crack Cocaine |
| Shawn Wooden | 6/2/21 | Crack Cocaine | 1.3 grams |
| Barry Tyson | 4/14/21 & 4/26/21 | Fentanyl & Crack Cocaine | .2 grams of Fentanyl .2 grams of Crack Cocaine |
| Deshawn Loggins | 4/14/21 & 5/3/21 | Crack Cocaine | .4 grams |
| Delonta Chappell | 6/4/21 | Crack Cocaine | 1.9 grams |
| Kevonta Randall | 4/26/21 | Crack Cocaine | .2 grams |
| Anthony Graves | 4/26/21 | Crack Cocaine | 1.2 grams |

The only defendant without a controlled buy is ▮▮▮▮▮▮▮. However, in addition to observing him on a near daily basis at the drug point and engaging in multiple hand to hand transactions, as stated above, MPD arrested him on April 28, 2021 in the Mellon Mart with a firearm, a large bag of marijuana, a scale, and plastic baggies used to package and distribute marijuana.

During surveillance, MPD has observed the defendants communicating with one another and working together to complete hand to hand transactions, as well as some of the undercover controlled buys. As highlighted above, many of the defendants have posted to social media platforms and have also been observed in one another's social media posts. In addition, an *initial partial* toll analysis confirms that the defendants are all communicating with one another by phone:



Finally, the search warrant results on the 10 residences that occurred during take down day (seizing five firearms, ammunition, drugs, and drug paraphernalia for packaging) from residences associated with the following defendants, further corroborates the strength of the evidence in this case that the defendants are engaging in a drug-trafficking conspiracy: Ricky Lyles, Wesley Leake, Leon Lindsay, Dezmond Cunningham, ▮▮▮▮▮, Shawn Wooden, and Barry Tyson.

**C. The history and characteristics of the Defendants**

The history and characteristics of the defendants also weigh in favor of detention. In this case, the majority of the defendants have felonies and prior convictions. Based on an MPD records check, nine of the thirteen defendants have prior felony convictions (Lyles, Leake, Lindsay, Cunningham, ▮▮▮▮▮, Wooden, Tyson, Delonta Chappell, Randall) and two of the thirteen defendants (Shorter and Griffin) have previous non-felony convictions. While only two defendants (Graves and Loggins) do not have criminal convictions, Graves has a recent arrest for

assaulting a police officer and Loggins has a pending case for assault and possession of a firearm. In addition, many of these defendants committed the instant offenses while on probation or supervised release demonstrating that they are unlikely to comply with any conditions of release the Court might impose. Although the PSRs are not yet available for many of the defendants, the United States wishes to highlight the following records for defendants whose PSRs were provided. The Government wishes to reserve the right to discuss additional criminal history details provided in the missing PSRs once they are provided or at the detention hearing.

1) **Ricky Lyles**

Ricky Lyles is 40 years old and has 8 prior convictions, 1 case pending, 21 prior arrests, and 7 bench warrants. Probation has ranked his failure to appear as high and his global re-arrest rate as very high. Lyles also committed the instant offense while on probation for another offense, making it unlikely that he will comply with any conditions of release. His previous convictions include  unlawful possession of a firearm, as well as prior controlled substances offenses (including distribution). Given the fact that Ricky Lyles engaged in 9 controlled sales of a large amount of cocaine base (131.6 grams total) from March 3-June 4, 2021 while on probation, he is a danger to the community and a serious risk of nonappearance/noncompliance.

2) **Nico Griffin**

Nico Griffin is 30 years old and has 1 prior conviction, 1 case pending, and 15 prior arrests. Although his only prior conviction is for gambling, his pending case is for the possession of ammunition. Although the PSR does not list Griffin's previous arrests, MPD records indicate that he has multiple arrests for possession with intent to distribute marijuana, cocaine, and crack, as well as disorderly conduct. Given the fact that Nico Griffin has prior arrests for drug offenses, engaged in 3 controlled sales of crack cocaine from March 16, 2021 to June 2, 2021, and has access

to ammunition (as well as firearms possessed by other MLK Crew Members), he is a danger to the community.

3) ███████████ – This Defendant is currently still at large and his PSR is unavailable.

4) **Wesley Leake**

Wesley Leake is 30 years old and has 2 prior convictions and 11 prior arrests. Despite serving a 60-month sentence for a 2016 conviction for burglary and unlawful possession of a firearm, Leake became a part of the instant drug trafficking conspiracy less than one year after ending his term of supervision on January 27, 2020. In furtherance of the conspiracy, Leake engaged in one controlled sale of PCP and one controlled purchase of crack cocaine on March 24 and April 9, 2021. Leake's actions show that he is a criminal who will engage in a wide array of criminal activities involving drugs and guns that pose serious dangers to the community.

5) **Leon Lindsay** – This Defendant is currently in custody in Virginia and has yet to be arrested federally. No PSR is available.

6) **Dezmond Cunningham**

Dezmond Cunningham is 27 years old and already has 5 convictions, as well as 14 arrests. Although his most recent convictions are for receiving stolen property in 2017, he has separate 2015 convictions for simple assault and attempted carjacking, ████████████████████ ███████████. Given the fact that Cunningham sold both Fentanyl and cocaine base to an undercover agent on April 21, 2021, and has committed violent felonies in the past, his release would endanger the community.

7) ███████████ – This Defendant is currently still at large and his PSR is unavailable.

8) **Shawn Wooden**

Shawn Wooden is 39 years old and has 5 prior convictions, 13 prior arrests, and 1 bench warrant. At the time he committed the instant offense, Wooden was on supervised release after serving 15 months of confinement for possession with the intent to distribute marijuana. It also appears that he was on supervised release for a 2014 drug trafficking conspiracy in DC Federal Court (13-cr-252) for which was sentenced to 50 months and 36 months of supervised release. Wooden also has a previous conviction for transporting a handgun and for possession with the intent to distribute heroin and cocaine. Given the fact that Wooden engaged in a controlled sale of crack cocaine on June 2, 2021 to an undercover officer while on release after serving sentences for local and federal drug trafficking offenses, and has a previous arrest involving a firearm, he is a danger to the community and a serious risk of nonappearance/noncompliance.

9) **Barry Tyson –** This Defendant has yet to have his initial appearance due to medical issues and no PSR is available.

10) **Delonta Chappell**

Delonta Chappell is 33 years old and already has 4 prior convictions, 6 pending cases, 17 prior arrests, and 4 bench warrants. Chappell is currently pending charges in Price Georges County for fraudulently obtaining a license by misrepresentation, possessing a fraudulently altered license, displaying that license, and driving on a highway without a required license. In addition, he has prior convictions for attempt to commit armed robbery, distribution of cocaine, and possession of cocaine. Based on his criminal history, Chappell has shown that he has access to firearms, has sold narcotics previously, is willing to commit robbery, and has no respect for the rule of law. Indeed, his current pending case for fraudulently displaying a license and unlawfully driving a vehicle shows that he will continue to attempt to cheat the system at every turn. Chappell cannot be trusted

to abide by any conditions of release, is a risk of non-appearance/non-compliance, and is a danger to the community. At the time of his arrest, Chappell was caught attempting to conceal 27.6 grams of cocaine base between his buttocks. The incident highlights that he is unlikely to comply with any conditions of release, seeks to conceal his activities from the authorities, and poses a danger to the community by going to great lengths to distribute drugs amongst the community.

**11) Anthony Graves**

Anthony Graves is 30-years old. While he has no prior criminal convictions, he has 2 previous arrests that are relevant to his dangerousness to the community. His first arrest, for simple assault in 2014, shows that Graves is willing to use violence against those that stand in his way. His second arrest, occurring on May 3, 2020, is for possession with intent to distribute marijuana, as well as assault on a police officer. Less than a year later after being no-papered for possessing marijuana and assaulting a police officer, Graves is back on the street engaging in a controlled sale of cocaine base on April 16, 2021. Graves' prior arrest history demonstrates that if he is not taken off of the street, his crimes will continue to escalate in severity. His arrest for assaulting a police officer also indicates that he is at risk of non-compliance with any conditions of release the Court might impose.

**12) Deshawn Loggins –** Although this defendant had his initial appearance today, the United States has not been provided with a PSR.

**13) Kevonte Randall**

At the young age of 23, Kevote Randall already has 2 prior convictions, 3 cases pending, 15 prior arrests, and 1 bench warrant. The PSR indicates that Randall's crimes have escalated ███

███████████████████████████████████████████████████████████████████

Fast forward to February 2021, and he is now pending charges in Arlington, Virginia for

Distribution/Selling a Schedule I/II Substance in Arlington, Virginia. While these charges are pending, he then went ahead and continued to participate in a large drug trafficking conspiracy that started in January 2021 until present. On April 26, 2021, Randall sold cocaine base to an undercover agent. Then on May 19, 2021, Kevonte Randall was arrested after he passed out in his car at a McDonalds with a firearm in his lap. After police arrived, agents arrested Randall and seized a Polymer 80 PMF "Ghost Gun" with no serial number, loaded with 6 rounds of .40 caliber ammunition. Further investigation, based on MPD surveillance, reveals that shortly before this incident, Randall was seen leaving the Mellon Mart. Accordingly, Randall appears to have been using this firearm in furtherance of his drug trafficking activities. Since being release for this incident, Randall has been observed, and was actually arrested at the drug point.

In this case, each of these defendants has shown a complete lack of respect for the rule of law, the criminal justice system, and their local community. As the Pre-Trial Services Reports show, the number of arrests for prior drug and gun offenses is seriously disturbing. In addition, the evidence in this case shows that each defendant has shown a brazen disregard for the health and safety of the local community. Here, nearly all of the defendants have been observed at the drug point on a near daily basis and has been observed on numerous occasions engaged in suspected hand to hand transactions in and around the drug point. Law enforcement has conducted at least one controlled buy from twelve of the thirteen defendants and, as previously mentioned, caught the remaining defendant, ███████████, with a large amount of marijuana and a firearm, at the Mellon Mart (which is part of the drug point). Based on each defendants' personal history and characteristics, the presumption that they are a risk of flight and danger to the community is correct.

**D. The nature and seriousness of the danger to any person or the community posed by the person's release**

The fourth factor–the nature and seriousness of the danger to any person or the community posed by the person's release–also weighs in favor of detention.  Each defendant's release poses a physical danger to the community.  Here, the thirteen defendants have been charged in a large drug trafficking conspiracy that is having a horrifying impact on the local community. As previously stated, the MLK Crew's area of operations is one of the most notorious in the city in terms of drug and gun violence and residents have complained about the dangers to the community. The series of violent events that have occurred in the last few months illustrate the very real danger that the MLK Crew has on the community. Not only have MLK Crew members targeted other rivals, but other rivals also appear to have targeted the members of the MLK Crew. As recently as July 15-16, 6 individuals (including two of the defendants) suffered gunshot wounds and a 6 year old girl (the daughter of Defendant Nico Griffin who was present at 11pm near the drug point) tragically lost her life. The evidence in this case has shown that the MLK Crew has access to drugs and guns and is willing to use violence to continue its operations. Each defendant's release would pose a serious danger to the community. Thus, this factor also weighs in favor of detention.

## CONCLUSION

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. The government also submits that a preponderance of the evidence establishes that each defendant is a serious risk of flight and no conditions or combinations of conditions will assure their appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain each defendant pending trial in this case.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C. Bar Number 415-793

 _/s/  David T. Henek_____
DAVID T. HENEK
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
555 4th Street, N.W.
Washington, D.C. 20530
N.Y. Bar No. 5109111
david.t.henek@usdoj.gov
202-252-7825

CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2021, a copy of the foregoing Memorandum (in redacted form) was sent via email to counsel for the defendant.

 _/s/  David T. Henek_____
DAVID T. HENEK
Assistant U.S. Attorney